# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | CASE NO.: 1:20-cr-00199-BYP-1 |
| ) | |
| **Plaintiff,** ) | JUDGE BENITA Y. PEARSON |
| ) | |
| -vs- ) | |
| ) | **DEFENDANT'S MOTION TO APPOINT** |
| **JASON TAYLOR,** ) | **EXPERT PURSUANT TO FEDERAL** |
| ) | **RULE OF EVIDENCE 706** |
| **Defendant.** ) | |

**NOW COMES** Defendant, Jason Taylor, by and through undersigned counsel, and respectfully moves this Honorable Court to issue an Order pursuant to Federal Rule of Evidence 706 appointing an expert witness that may opine to the specific risks posed to Defendant, based on his individual medical condition, by COVID-19 during his detention at North East Ohio Correctional Center (NEOCC). The current pandemic is unique in our lifetime; perhaps a once in a hundred year event. The aggressive spread of the disease in the federal and state correctional systems is well documented and accelerating. What seems to be common knowledge is that actions taken after the virus is present in an institution are too late to prevent significant spread, sickness and mortality. This Honorable Court stands in the unique position of being able to actually remove a detainee, upon a showing of medical evidence of a substantial and unique vulnerability, from the clear and present danger they face.

Pursuant to Fed. R. Evid. 706, "On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing." Fed. R. Evid. 706(a). In appointing an expert, a court has "broad discretion to appoint an expert under Rule 706"; however, "such appointments are not commonplace, and are

reserved for exceptional cases involving particularly complex matters." *Abdoush v. Prisoner Health Servs.*, E.D.Mich. No. 2:11-CV-15138, 2014 U.S. Dist. LEXIS 61694, at *2 (May 5, 2014). See also *Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1348 (Fed. Cir. 2009); *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993). Further, the appointment of an expert pursuant to Rule 706 cannot be to "act as an advocate" for a particular party. *Id. quoting Brooks v. Tate*, No. 1:11-cv-01503, 2013 U.S. Dist. LEXIS 111420, 2013 WL 4049043, at *1 (E.D. Cal. Aug. 7, 2013) (citations omitted); *accord Colton v. Scutt*, No. 10-CV-13073, 2012 U.S. Dist. LEXIS 157589, 2012 WL 5383115, at *7 (E.D. Mich. Nov. 1, 2012) (Majzoub, M.J.); *Tangwall v. Robb*, No. 01-10008, 2003 U.S. Dist. LEXIS 27128, 2003 WL 23142190, at *4 (E.D. Mich. Dec. 23, 2003).

In the instant matter, Mr. Taylor requests this Court to appoint Dr. Venktesh Ramnath, a board-certified physician in Internal Medicine, Pulmonary Disease, and Critical Care Medicine. Mr. Taylor seeks appointment of Dr. Ramnath so that he may render an independent expert opinion on the specific threat posed to him if exposed to the COVID-19 virus and the probable medical consequence should he contact the virus while detained at NEOCC. Dr. Ramnath has evaluated NEOCC, is familiar with the remedial sanitary measures and protocols currently in place and would be prepared to render a timely opinion upon a review of Mr. Taylor's personal medical history and the completion of a physical exam.

It is submitted that Mr. Taylor's request is appropriate as it is for the purposes of rendering an independent opinion on a complex medical issue. As such, if appointed, Dr. Ramnath would not be working as an advocate for Mr. Taylor. Rather, Dr. Ramnath would be rendering an unbiased medical opinion, specific to Mr. Taylor, for this Court to utilize in determining, with reasonable medical probability, Mr. Taylor's actual risk should his detention at

NEOCC continue. Only then can this court determine whether Mr. Taylor should be temporarily released from detention or the terms of his detention otherwise modified for "compelling reasons" as provided for under 18 USC 3142(i).  The issue at hand is highly medically complex and beyond any base knowledge of a court or counsel.  Dr. Ramnath has already completed a report addressing this issue for an inmate at NEOCC in a case pending in this district. The report evaluates NEOCC's disease spread prevention remediation protocols and provides great detail to the effect contraction of COVID-19 would have on the specific inmate. The report further quantifies the threat posed and is not just a generalized summary. (See Exhibit "A" – Dr. Ramnath's Expert Report in US v. Gage.) [1]

With regard to protocols NEOCC has implemented thus far, Dr. Ramnath has already opined, after a full review of internal documents from the NEOCC, that "the existing processes are inadequate," the screening process for COVID-19 transmission is outdated, and the Infection Control Policy is "inadequate." (Ex. A: Expert Report, p. 12-13).  "[T]he facility administration is inappropriately minimizing the risk of COVID[-]19 in its facility, not just to inmates and staff/contractors but also [to] the community at large." (Ex. A: Expert Report, p. 14).  In addition to Dr. Ramnath's findings, there have been multiple local news stories specifically addressing the lack of preventative measures and risks posed at NEOCC.[2] (See Article attached hereto as Exhibit "B").

---

[1] Dr. Ramnath's Expert Report pertains to United State v. Aaron Gage, Northern District of Ohio Case No. 1:19-CR-705, Dkt. 16 - Motion for Bond, Exhibit A.
[2] Cleveland.com articles include: *'Nothing changed in here': Detainees at private Ohio prison talk fears amid corona*, April 7, 2020 https://www.cleveland.com/coronavirus/2020/04/nothing-changed-in-here-inmates-at-private-ohio-prison-talk-fears-amid-coronavirus.html; and *Doctor says staff at private Youngstown prison aren't doing enough to prevent coronavirus spread*, April 25, 2020 https://www.cleveland.com/court-justice/2020/04/doctor-says-staff-at-private-youngstown-prison-arent-doing-enough-to-prevent-coronavirus-spread.html

Given those findings relative to NEOCC, a specific analysis of Mr. Taylor's particular vulnerability seems critically warranted; perhaps even a matter of life and death. While Dr. Ramnath has formed an opinion as to NEOCC's handling of the COVID-19 virus inside its' walls as of April 22, 2020, Mr. Taylor has no indication what Dr. Ramnath's opinion may be with regard to his vulnerability. Mr. Taylor's existing medical conditions make him seem reasonably vulnerable and the undersigned takes this unique step in requesting an independent expert evaluation based on his legitimate, good faith concern for and ethical duty to Mr. Taylor.

On April 2, 2020, Mr. Taylor filed his *Emergency Motion for Amendment of Order of Detention*, Dkt. 21, setting forth his reasons why he should be released from custody amid the COVID-19 pandemic. Included in the motion were a list of significant medical conditions that Mr. Taylor suffers, of which several are CDC co-morbidity factors including diabetes, obesity and chronic lung issues;[3] in addition to acute lymphedema. This motion was denied by this Court on April 8, 2020; finding that Mr. Taylor failed to rebut the presumption in favor of detention set forth in 18 U.S.C 3142. While this ruling was issued only 3 weeks ago, the risk to Mr. Taylor has grown enormously as the COVID-19 numbers continue to explode within the community and especially in correctional institutions. Indeed the difference in circumstances is staggering. On April 8, 2020, Ohio had 5,148 total confirmed cases and 193 deaths. As of April 30, 2020, there have been 18,027 confirmed cases and 975 deaths. While only 17 prisoners in Ohio correctional facilities tested positive as of April 8, 2020 and none had died, there are 3,792

---

[3] CDC COVID-19 Information. https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html

4

confirmed cases in Ohio prisons and 31 deaths as of May 1, 2020.[4]  (See Ohio Department of Rehabilitation and Corrections Dashboard attached hereto as Exhibit "C").

The ability of COVID-19 to spread throughout an entire detention facility can be seen in two particular Ohio Department of Rehabilitation and Corrections facilities; Marion Correctional Institution and Pickaway Correctional Institution.  At those facilities, the virus spread practically throughout the entire prison population in a very short period of time with 1940 inmates testing positive at Marion Correctional Institution and 1477 inmates testing positive at Pickaway Correctional Institution.[5]  While no inmates at NEOCC have tested positive for COVID-19 as of May 1, 2020, it is submitted that is due only to a lack of testing.  Despite no inmates testing positive for COVID-19, three (3) staff members have tested positive.  See Fn. 3.  The virus is in NEOCC and it is urgent that an expert report by Dr. Ramnath be completed for Mr. Taylor.  Two weeks from now, as we have seen in the public sphere and in corrections, the Courts in this District will be dealing an even more dire set of circumstances.

Rather than both the Defendant and the Government continuing to make completing assumptions about what threats Mr. Taylor faces from COVID-19 while incarcerated with significant health conditions, the appointment of Dr. Ramnath would allow for an expert report that specifically identifies and quantifies the threats posed; or alternatively, the lack of threat he may face.  Accordingly, it is submitted that this Honorable Court should issue an Order appointing Dr. Venktesh Ramnath for the purpose of rendering an expert opinion of the threat posed to Mr. Taylor while incarcerated at NEOCC during the COVID-19 pandemic.

---

[4] Public information issued through State of Ohio COVID 19 dashboard at https://coronavirus.ohio.gov/wps/portal/gov/covid-19/home
[5] https://drc.ohio.gov/Portals/0/DRC%20COVID-19%20Information%2004-29-2020%201300.pdf

Wherefore, for the foregoing reasons, it is respectfully requested that this Honorable Court issue an Order pursuant to Federal Rule of Evidence 706 directing the parties to show cause why the Court should not appoint Dr. Venktesh Ramnath, or another medical expert as an independent expert witness that may opine to the specific risks posed to Defendant by COVID-19 during his detention at North East Ohio Correctional Center.

Respectfully submitted,

  /s/ - Michael J. Goldberg
**MICHAEL J. GOLDBERG (0040839)**
**THE GOLDBERG LAW FIRM, LLC**
323 Lakeside Avenue, Suite 450
Cleveland, OH 44113
Tel: 216-696-4514
Fax: 216-781-6242
goldberg@goldberg-lawfirm.com
*Attorney for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been filed electronically this 1st day of May, 2020. Notice of this filing will be sent to all Parties by operation of the Court's ECF system. Parties may access this filing through the Court's system.

  /s/ - Michael J. Goldberg
**MICHAEL J. GOLDBERG (0040839)**
*Attorney for Defendant*